

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Kenneth R. Booth, | ) | Docket No.: 2017-01-0361 |
| Employee, | ) | |
| v. | ) | |
| Allegis Group, | ) | State File No.: 24640-2017 |
| Employer, | ) | |
| And | ) | |
| Agri General Insurance Company, | ) | Judge Audrey A. Headrick |
| Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned workers' compensation judge on November 28, 2017, on Kenneth Booth's Request for Expedited Hearing. The central legal issue is whether Mr. Booth is likely to establish at trial that he suffered an injury arising primarily out of his employment. For the reasons set forth below, the Court holds he is entitled to the requested medical benefits.

### History of Claim

Although the parties dispute the compensability of Mr. Booth's right-shoulder condition, the facts are essentially undisputed. Mr. Booth, age 60, worked for Allegis Group, a temporary agency, which placed him at Volkswagen as a production worker. His job duties required unloading carts containing parts that weighed between twenty and thirty-five pounds. Mr. Booth's workstation floor was steel-plated. While unloading a cart on April 4, 2017, the locking mechanism failed, causing him to fall and land on his right shoulder.

Dr. Allen Von Gremp, whom Mr. Booth selected from a panel, diagnosed him with a right shoulder sprain and referred him for physical therapy. (Ex. 4.) Dr. Von Gremp noted, "mech of injury shows causation and work relation >51%." (Ex. 6.) After physical therapy was unsuccessful, Dr. Von Gremp referred Mr. Booth to Dr. Rickey Hutcheson, an orthopedic surgeon.

1

Allegis Group opted not to provide Mr. Booth with a panel of orthopedic surgeons. Instead, it authorized Mr. Booth to see Dr. Hutcheson. Dr. Hutcheson diagnosed a right shoulder strain and rotator cuff tear. He also ordered an arthrogram MRI. At that time, Dr. Hutcheson provided an opinion "with greater than 51% certainty that this is work-related." (Ex. 1.)

At Mr. Booth's next visit, Dr. Hutcheson reviewed Mr. Booth's May 20 arthrogram MRI that showed a massive rotator cuff tear. After reviewing the MRI results, Dr. Hutcheson changed his causation opinion. He explained that the retraction, atrophy, and scarring indicated that the rotator cuff tears had "not occurred acutely over the period of a month." *Id.* Dr. Hutcheson commented that the fall "just caused him to have pain." *Id.* He concluded that he could not say "with greater than 51% certainty that this is work related because of the nature of the atrophy and chronic appearance of the tears." *Id.* Dr. Hutcheson further determined that the rotator cuff was not repairable and recommended that Mr. Booth have a shoulder replacement in the future under his private health insurance. On the same day, Allegis Group denied Mr. Booth's claim.

Mr. Booth sought a second opinion from Dr. Todd Bell, an orthopedic surgeon. Dr. Bell recommended arthroscopic surgery to repair his rotator cuff. He advised that Mr. Booth's "symptoms are greater than 50% related to the work injury on 4/4/17, both temporally and mechanistically." (Ex. 2.)

During his deposition, Dr. Hutchison reiterated his prior opinion that Mr. Booth's rotator cuff tears and need for surgery were due to degenerative changes. Dr. Hutchison stated, "[Mr. Booth] may have had some fibers that got torn [at the time of his fall] . . . [b]ut the greater than 51 percent of the rotator cuff for sure was already torn because of the muscle atrophy." (Ex. 1.) He based his opinion on his interpretation of Mr. Booth's MRI, which he felt showed muscle atrophy, significant retraction of the infraspinatus and supraspinatus muscles, and degenerative changes within the AC joint.

Dr. Hutchison found that the only intact tendon at the time of Mr. Booth's fall was the teres minor tendon. He explained that a person's shoulder can still function with only one tendon attached, but the person would experience weakness. Dr. Hutchison admitted he did not "know what [Mr. Booth's] strength level was prior to [the fall]." *Id.* However, he agreed that when Mr. Booth fell:

> His shoulder ceased to function. It became weaker after the accident, which I felt was more due to the trauma and the strain component of it, but in no way was it related to the rotator cuff tendons that were torn because of the fact that they had been torn prior to the accident.

*Id.*

2

During Dr. Bell's deposition, he explained how his interpretation of Mr. Booth's MRI differed from Dr. Hutchison's. First, Dr. Bell did not see significant atrophy of the muscles indicative of a long-term process. Regarding the severe retraction, Dr. Bell stated that, "[u]sually, severe retraction is associated with a longstanding tear and/or a very long tear. So, very large tears even that are relatively recent can retract severely." (Ex. 2.) Dr. Bell further explained that, "it's not really absolutely clear that impingement causes the tear. Tear [sic] can also cause the impingement." *Id.* As to the fraying of the subscapularis tendon, Dr. Bell stated that fraying is not always evidence of a degenerative process.

Dr. Bell also testified about causation. He stated he based his evaluation on "[t]he timeline, the mechanism, and the findings seen on his exam and on his MRI and also his lack of shoulder symptoms prior to the fall." *Id.* Dr. Bell felt the cause of Mr. Booth's pain and weakness was the rotator cuff tear, which he felt "was most likely related to his work-related fall a month prior to his [visit with Dr. Bell]." *Id.*

Mr. Booth credibly testified regarding his level of functioning before and after his fall. He testified in detail regarding the vigorous and physically demanding pre-employment testing, or "boot camp physical," that he underwent and passed. After Allegis Group hired him to work at Volkswagen, Mr. Booth's production job required him to unload parts from carts that weighed twenty to thirty-five pounds. In his personal time, Mr. Booth regularly golfed, camped, made furniture in his woodshop, chopped firewood, loaded and unloaded firewood, and performed all of his own yardwork. Further, Mr. Booth emphatically stated he did not experience any pain or weakness in his right shoulder prior to his fall on April 4.

After Mr. Booth's fall, he indicated he experienced pain and weakness in his right shoulder that restricted or prevented him from performing many of his prior activities.[1] For the activities that he still tried to perform, Mr. Booth indicated he performed them with difficulty. His shoulder pain also causes him to have problems sleeping at night.

Mr. Booth argued that his pre-existing physical condition refutes Dr. Hutchison's opinion that his rotator cuff tears were present before his work-related fall on April 4. He also argued that Dr. Bell's opinion supports his position that he sustained a compensable injury. Therefore, he requested that the Court designate Dr. Bell as his treating physician.

Allegis Group argued that Dr. Hutchison's opinion regarding causation is presumed correct under Tennessee Code Annotated section 50-6-102(12)(A)(ii) (2017). It further argued that Dr. Bell's opinion failed to rebut the presumption of correctness

---

[1] Mrs. Booth testified, corroborating Mr. Booth's level of function before and after his fall. She also stated she was not aware of Mr. Booth having any right-shoulder problems before the fall.

given to Dr. Hutchison. Therefore, Allegis Group requested that the Court deny Mr. Booth's request.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Mr. Booth bears the burden of proof on all essential elements of his workers' compensation claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, due to the interlocutory nature of an expedited hearing, the Court is not required at this stage to determine if Mr. Booth has proven compensability of his claim by a preponderance of the evidence in order to initiate benefits. Instead, the Court must consider the evidence before it and determine if Mr. Booth is likely to satisfy his burden of proof at a compensation hearing. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The Workers' Compensation Law requires the employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" When the treating physician selected from a panel refers an employee to a specialist, "[t]he employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable [specialists]." Tenn. Code Ann. § 50-6-204(a). Since Allegis Group opted not to offer Mr. Booth a panel upon Dr. Von Gremp's referral to Dr. Hutchison, Allegis Group is "deemed to have accepted the referral." *Id.* This resulted in Dr. Hutchison becoming "the treating physician." *Engler v. Able Moving Co.,* No. W2016-02125-SC-R3-WC, 2017 Tenn. LEXIS 713, at *11-12 (Tenn. Workers' Comp. Panel Oct. 30, 2017). As a result, the presumption of correctness on the issue of causation attaches to Dr. Hutchison. *Id.* at *13-14; Tenn. Code Ann. § 50-6-102(14)(E).

Mr. Booth requested that the Court order Allegis Group to provide him with additional medical treatment with his own physician, Dr. Bell. Mr. Booth must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." *Id.*

4

*Medical Benefits*

Here, the dispute revolves around the MRI interpretations of Dr. Hutchison and Dr. Bell. Both experts were qualified and provided a great deal of testimony about their interpretations as well as the supporting reasons behind their opinions. The Court did not summarize that testimony in detail but considered it carefully.

After considering the medical and lay evidence presented, the Court gives greater weight to Dr. Bell's opinion on the issues of causation and the less-invasive, arthroscopic shoulder surgery he recommended.[2] On the issue of causation, the Court accepts Dr. Bell's opinion because it is consistent with the credible testimony of Mr. Booth. Thus, the Court holds that Dr. Bell's opinion rebuts Dr. Hutchison's opinion by a preponderance of the evidence. Dr. Hutchison, who believes the rotator cuff tears existed prior to Mr. Booth's fall, admitted he did not "know what [Mr. Booth's] strength level was prior to [the fall]." He testified that a person with rotator cuff tears such as Mr. Booth could function but would experience weakness.

The Court observed Mr. Booth testify and noted he was self-assured, confident, and forthcoming. He detailed his vigorous level of physical activity and lack of right-shoulder pain or weakness prior to the fall. Mr. Booth also described his limited level of activity as well as right-shoulder pain and weakness that developed after his fall. The Court finds him credible. *See* Kelly v. Kelly, 445 S.W.3d 685, 692-95 (Tenn. 2014). Likewise, the Court finds consistent Mr. Booth's testimony and the medical history he provided to Dr. Hutchison and Dr. Bell documenting that he had no right-shoulder problems before the fall. When considering all of the evidence, the Court finds that Mr. Booth sustained his right-shoulder rotator cuff tears when he fell onto a steel-plated floor while performing his job.

Accordingly, the Court holds the evidence shows Mr. Booth is likely to prevail at a hearing on the merits in proving he suffered a right-shoulder injury arising primarily out of his employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Allegis Group or its carrier shall authorize Mr. Booth to continue treating with Dr. Bell and, if he still deems it appropriate, authorize a right-shoulder arthroscopic surgery for treatment of his April 4, 2017 injury. Mr. Booth or the providers shall furnish Allegis Group or its carrier bills for the charges incurred for compensable care, and Allegis Group or its carrier shall timely pay these charges.

---

[2] Regarding causation, Dr. Bell's office note stated Mr. Booth's "symptoms are greater than 50% related to the work injury on 4/4/17, both temporally and mechanistically." (Ex. 2.)

5

2. This matter is set for a Status Hearing on Tuesday, January 30, 2018, at 2:30 p.m., Eastern Time. You must call 423-634-0164 or toll-free at 855-383-0001 to participate. Failure to call may result in a determination of the issues without your participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2017). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 18th day of December, 2017.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

6

# APPENDIX

<u>Exhibits</u>:
1. Deposition of Dr. Rickey Hutcheson
2. Deposition of Dr. Todd Bell
3. First Report
4. Panel
5. Wage Statement
6. Medical records of Dr. Alan Von Gremp
7. Notice of Denial
8. Drawing by Mr. Booth

<u>Technical record</u>:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Show Cause Order
4. Order on Show Cause Hearing
5. Request for Expedited Hearing
6. Notice of Expedited Hearing
7. Motion to Dismiss Request for Expedited Hearing
8. Order Denying Motion to Dismiss Request for Expedited Hearing
9. Employer and Carrier's Witness and Exhibit Statement
10. Employee's Witness and Exhibit Statement
11. Notice of Filing of Deposition (Dr. Hutcheson)
12. Notice of Filing of Deposition (Dr. Bell)
13. Expedited Hearing Brief of Allegis Group and Agri General Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this 18th day of December, 2017.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Christian Lanier, Employee's Attorney | | X | lanierlaw@comcast.net |
| David J. Deming, Employer's Attorney | | X | ddeming@manierherod.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8